WILLIAM BOOTH, PLAINTIFF, v. UNITED STATES FIDEL-
ITY AND GUARANTY COMPANY, DEFENDANT.

Decided July 11, 1925.

Insurance—Accident—Insurance Against Total and Continuous
Disability From Time of Accident—Evidence Showed Plain-
tiff Did Some Work After Accident Before Total Disability De-
veloped But Was Suffering From Trouble Which Shortly
Developed Into Total Disability—Held, That Plaintiff Was
Entitled to Recover in Full.

For the plaintiff. *Bleakly, Stockwell & Burling.*

For the defendant, *Carr & Carroll.*

The opinion of the court is delivered by

Donges, J.    Suit is brought to recover on a contract of
insurance issued by defendant to plaintiff, assuring him cer-
tain payments in event of accidental bodily injuries, whether
fatal or non-fatal.

The facts are stipulated and are submitted for determina-
tion without a jury.

The question presented is whether, under the agreed facts,
plaintiff is entitled to recover under the clause in the policy
providing for full indemnity if the assured meet accidental
injury, which "shall, independently and exclusively of all
other causes, continuously and wholly disable and prevent
the insured from the date of accident from performing any
and every kind of duty per taining to his occupation," or
under another provision for partial indemnity if "such injury
shall not wholly disable the insured, but, independently and
exclusively of all other causes, shall from the date of the
accident [or immediately following total disability] continu-
ously disable and prevent him from performing one or more
material daily duties pertaining to his occupation."

From the agreed facts it appears that on May 19th, 1924,
during the term of the policy, at Newport News Shipbuilding

Company, at Newport News, Virginia, while in his employment as a ship surveyor and inspector, plaintiff accidentally fell and was struck upon the head and chin and was rendered insensible. Upon recovering his senses he had the apparent and superficial wounds and injuries dressed and went to his temporary residence in Newport News. He immediately complained of dizziness, headache, blurred vision, and that his eyes "had gone bad on him." He "could not see well enough nor carry an association of ideas long enough to read a telegram from his employer;" was obliged to have it read to him and could not recall the answer made thereto. From the time of the accident his vision was impaired, he could read only one letter of a word at a time, and seemed unable to comprehend the whole word at once. He could not write with his usual facility. He suffered pains in the head.

From May 19th to June 20th, 1924, plaintiff went to his place of employment and endeavored to perform his duties for a part of each day. He was unable to remain for the usual period of time, and was obliged to remain away entirely for one day in each week. The quality of his work fell off from the date of the injury and grew progressively worse. He failed to note defects in the work under his supervision, and others made reports thereon.

On June 20th, 1924, plaintiff became very ill. He was only semi-conscious. He lost the use of his voice and of his right arm and right leg, and on June 23d he suffered a complete paralysis of the right side, and on June 30th was operated on for decompression of the brain.

It is agreed that plaintiff had typical right hemiplegia, accompanied by asphasia, caused by a lesion in the left internal capsule of the brain; that the affected vision, loss of memory and lack of co-ordination, as evidenced in plaintiff's handwriting, are symptoms of brain disorder; that his condition was due to hemorrhage or thrombosis; that plaintiff's condition is known as "spate" or late apoplexy, and is caused by a concussion of the brain, the result of a fall or a blow, and that his total breakdown and total incapacity are a direct

result of the accident, and prevent him from performing any and every kind of duty pertaining to his occupation.

Defendant insists plaintiff was not wholly disabled and prevented from performing any and every kind of duty from the date of the accident, because he went to his place of employment and apparently performed some of the duties of his occupation, and that he was not wholly disabled and prevented from performing them until June 20th, when he became paralyzed and was unable to get about at all.

A fair and reasonable construction of the contract does not support this conclusion. If the contract clearly said this, a court would be bound by the terms of the contract, unless such construction would bring about an unreasonable or absurd result, or would defeat the manifest intention of the parties and the object and purpose of entering into the contract.

In view of the nature of the contract and the object sought, it is a fair and reasonable construction to hold that where the injury is such that the results continue from the date of accident and wholly incapacitate the assured within such time as is required for the processes of nature to bring about such total disability, there is a continuous and total disability from the date of the accident. It is admitted in this case that the condition which resulted in paralysis on June 20th was present immediately following the accident. To say that it did not wholly disable and prevent the insured from the date of the accident from performing his duties, because he endeavored to perform them, is to put a strained and unfair interpretation upon the term used and to do violence to the obvious purpose of the contract. The fact that Booth tried to work is not to be taken as conclusive evidence of his ability to do so. On the contrary, the agreed facts leave no doubt that, from the time of injury, he was in a serious condition, and that prudence required that he refrain from all effort until he was cured. In the observation of all there have been instances where men have stuck to their posts long after ability was gone, and there are historic instances of dying men persisting in performing duty. Plaintiff

47

should not be penalized for honest efforts to keep going when nature demanded that he desist.

Nor does the use of the word "prevent" mean that there shall be a physical absence from the place of employment. I take the word in this connection to mean that plaintiff must be unfitted for his usual duties, and be hindered and impeted by his injury in performing them.

It follows from the above that plaintiff was continuously and wholly disabled and prevented from the date of the accident from performing any and every kind of duty pertaining to his occupation.

These views are supported by numerous cases, among which are *Rathbun* v. *Globe Indemnity Co.*, 184 *N. W. Rep.* 903; *Metropolitan Casualty Insurance Co.* v. *Cato*, 74 *So. Rep.* 114; *Wall* v. *Casualty Co.*, 86 *S. W. Rep.* 491; *North American Accident Insurance Co.* v. *Miller*, 193 *Id.* 750; *Erickson* v. *Order, &c.*, 176 *Pac. Rep.* 989; *Martin* v. *Travelers Insurance Co.*, 247 *S. W. Rep.* 1024.

If there were any doubt of the soundness of the conclusion above stated on the broad question of the fair and reasonable meaning of the contract as to when insured is wholly disabled and prevented from performing his duties, our court of last resort settled what is meant by the words "any and every kind of duty pertaining to his occupation." In the case of *Gross* v. *Commercial Casualty Insurance Co.*, 90 *N. J. L.* 594, almost identical words were involved, and it was held that to be totally disabled and prevented from performing any and every kind of work, it was not necessary that insured "be so disabled as to prevent him from doing anything whatsoever pertaining to his occupation or to any part of his business, but that he must be so disabled as to prevent him from doing any and every kind of business pertaining to his occupation, and that there was a difference between being able to perform any part and any and every kind of business."

The facts in this case clearly show that if Booth was able to perform any part of his duties after the injury, he was wholly disabled and prevented from performing any and

every kind of duty pertaining to his occupation. The fact that he could not see well, and lacked mental co-ordination, made it impossible for him to perform his duty as an inspector of technical work.

I conclude, therefore, that plaintiff is entitled to recover full compensation under the terms of his contract of insurance.

Under the stipulation judgment "should be entered at the rate of $25 per week, from June 20th, 1924, to the date of adjudication of the cause."